IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREAT NORTHERN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action 05-635 |
| GREENWICH INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CONTI, District Judge**

*Introduction*

Pending before the court is a motion for reconsideration filed by plaintiffs Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal" and, together with Great Northern, "plaintiffs"). (Doc. No. 53.) In a memorandum opinion dated August 24, 2007 (the "prior opinion"), the court granted partial summary judgment in favor of plaintiffs and partial summary judgment in favor of defendant Greenwich Insurance Company ("Greenwich" or "defendant"). (Prior Op. (Doc. No. 51).) Plaintiffs ask the court to reconsider the portion of the prior opinion granting partial summary judgment in favor of Greenwich. The court heard oral arguments with respect to this motion on October 25, 2007. (Tr. of Oral Argument (Doc. No. 60).) By reason of there being genuine issues of material fact regarding the issue of illusory coverage, plaintiffs' motion for reconsideration will be granted, and the portion of the prior opinion limiting Greenwich's potential liability for equitable contribution to $100,000.00 will be vacated.

*Standard of Review*

A motion for reconsideration is granted only if one of three situations is shown: "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Reich v. Compton*, 834 F.Supp. 753, 755 (E.D. Pa. 1993) (citing *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. 1992)).

> Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided. . . . Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly. . . .

*Williams v. Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998) (internal citations omitted).

*Discussion*

In the prior opinion, the court granted partial summary judgment to plaintiffs and partial summary judgment to defendant. (Prior Op. (Doc. No. 51).) Plaintiffs' motion for reconsideration concerns the court's determination that the $1,000,000.00 in coverage provided under the Greenwich Policy[1] for the blowout at the Ronco Well was not rendered "illusory" by the $100,000.00 sublimit applicable to property damage under another endorsement because the Hostile Fire Exception to the Pollution Exclusion extended coverage for both bodily injury and property damage. (Prior Op. (Doc. No. 51) at 31-33.) After a thorough review of the Greenwich Policy, the court is convinced that genuine issues of material fact exist regarding this matter and therefore its prior conclusion was erroneous.

---

[1] All capitalized terms used in this opinion will, unless the context indicates otherwise, have the meanings ascribed to those terms in the prior opinion.

The language of the Greenwich Policy containing the Pollution Exclusion and the Hostile Fire Exception provided:

> This insurance does not apply:
>
> \*\*\*
> (f)(1) to bodily injury or property damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;
>
> \*\*\*
> pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste; waste includes material to be recycled, reconditioned or reclaimed;
>
> subparagraph f.(1) of this exclusion does not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire; as used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be;
>
> \*\*\*

(Def.'s Ex. 4 (Doc. No. 35-5) at 8-9.) The court determined that the fire at issue in this case was a "hostile fire" as defined by the Greenwich Policy, and that the property damage at issue was "caused by heat, smoke or fumes" from that hostile fire. (Prior Op. (Doc. No. 51) at 17-27.) Those conclusions are not at issue at this time.

The court determined in the prior opinion that any liability on the part of Greenwich for equitable contribution would be limited to $100,000.00 by reason of the Pollution Hazard Incidents Exclusion. *Id.* at 27-35. It is this portion of the prior opinion that is presently at issue. The relevant portions of the Greenwich Policy provided:

> . . . pollution hazard incident, symbol "z", means an incident of property damage only, arising out of the sudden and accidental discharge, dispersal, release or escape of natural gas, oil or other petroleum substances or derivatives (including any oil refuse or oil mixed with wastes), well drilling or servicing chemicals or

3

saline substance into or upon any land, the atmosphere or any above or below ground water. The entirety of any such accidental discharge, dispersal, release or escape shall be deemed to be one incident.

\*\*\*

THE MOST WE WILL PAY for liability because of property damage caused by one or more symbol "z" pollution hazard incidents will not be greater than the following limits of insurance:

   $100,000  Limit per each property damage Symbol "z" Pollution Hazard Incident

   $100,000  Aggregate limit per annual policy period for all property damage Symbol "z" Pollution Hazard Incidents

(Def.'s Ex. 4 (Doc. No. 35-5) at 7, 16.) Greenwich argued that coverage under the Greenwich Policy (if coverage existed at all) was limited to $100,000.00 under the Pollution Hazard Incidents Exclusion. Plaintiffs responded by arguing that the Pollution Hazard Incidents Exclusion, if given effect in this case, would render coverage under the Hostile Fire Exception to the Pollution Exclusion illusory. Greenwich countered plaintiffs' argument by asserting that coverage under the Hostile Fire Exception was not rendered illusory by the Pollution Hazard Incidents Exclusion because the former extended coverage for *both* bodily injury *and* property damage, while the latter limited coverage *only* for property damage. The court, in the prior opinion, agreed with Greenwich's argument, holding that since coverage existed under the Hostile Fire Exception for "bodily injury," coverage thereunder for the full $1,000,000.00 was not obliterated by the application of the $100,000.00 sublimit contained in the Pollution Hazard Incidents Exclusion. (Prior Op. (Doc. No. 51) at 32.)

  In their motion for reconsideration, plaintiffs challenge the court's prior determination that the application of the sublimit would not render potential coverage for the full $1,000,000.00

4

illusory because of the availability of coverage for bodily injury. They contend that the court misconstrued the Greenwich Policy, since "Blowout & Cratering" coverage (the coverage provision under which plaintiffs contend that they are entitled to equitable contribution for payments made to third parties as a result of property damage caused by the blowout at the Ronco Well) applies *only* to property damage and *never* to bodily injury.

In concluding in the prior opinion that coverage under the Hostile Fire Exception was not illusory, the court erred in focusing solely on the language of that provision without considering the General Liability provisions under which coverage was extended. The Hostile Fire Exception is an exception to an exclusion rather than a stand-alone coverage provision. A close examination of the Greenwich Policy reveals that "Blowout & Cratering" coverage is listed under a heading entitled "Special Property Damage Hazards." (Def.'s Ex. 4 (Doc. No. 35-5) at 5.) The plain language in the Greenwich Policy extending coverage for up to $1,000,000.00 for a "BLOWOUT & CRATERING HAZARD" makes it clear that coverage under that provision is available *only* for property damage. *Id.* at 11.

The court's prior determination that coverage could exist for bodily injury under the Hostile Fire Exception for the blowout at the Ronco Well was clearly erroneous, since an exception to an exclusion cannot create coverage otherwise unavailable under the provisions of an insurance policy. Having considered in the prior opinion legal principles previously adopted by the Supreme Court of Maine, this court made the following observations:

> At the outset, it is worth noting that the premise of the argument made by Great Northern and Federal is itself questionable. They attempt to glean from an exception to a particular exclusion coverage that would trump a separate and distinct exclusion. This type of argument is at odds with "the basic principle of insurance law that coverage cannot be provided by an exclusion clause." *Globe*

5

> *Indem. Co. v. Jordan*, 634 A.2d 1279, 1283 (Me. 1993). While "[a]n exclusion clause can 'subtract from coverage' granted somewhere else in the policy[,]" it cannot alone establish coverage in the first place. *Id.* (quoting *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 387 (Me. 1989)). In any event, however, the court need not resolve the tension between this "basic principle of insurance law" and the "reasonable expectations" principle discussed earlier, since it is clear from the language of the Greenwich Policy that the coverage provided by the Hostile Fire Exception to the Pollution Exclusion is not illusory.

(Prior Op. (Doc. No. 51) at 31.) The court incorrectly assessed the source of coverage for the blowout at issue in this case. It must now be determined whether there is illusory coverage in the context of this case.

Before addressing that inquiry, the court will briefly review the issue of "illusory coverage". In *401 Fourth Street, Inc. v. Investors Insurance Group*, 879 A.2d 166, 174 n.3 (Pa. 2005), the Supreme Court of Pennsylvania implicitly recognized the existence of the "illusory coverage" doctrine under Pennsylvania law. The United States District Court for the Middle District of Pennsylvania noted in *St. Mary's Area Water Authority v. St. Paul Fire & Marine Insurance Co.*, 464 F.Supp.2d 397, 412 (M.D.Pa. 2006), that *401 Fourth Street* had implicitly recognized the existence of that doctrine without setting forth any "formal standard for evaluating when coverage is illusory."[2] *Id.* Faced with generalized, non-specific guidance from

---

[2] Although not fully articulated in decisions concerning "illusory coverage," the basis for applying the doctrine is the general rule that ambiguous language in an insurance policy must be construed in favor of coverage and against the insurer. *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 464 F.Supp.2d 397, 411 (M.D.Pa. 2006)("The rationale often is that the conflict between the coverage language and the exclusion language creates an ambiguity that must be resolved in favor of the insured."). Like most jurisdictions, Pennsylvania adheres to this rule of construction. *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1177 (Pa. 2006) ("Regardless of which one is 'right' or 'wrong,' the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured."). In this case, one could argue that the different limits set by the "Blowout & Cratering" endorsement and the "Pollution Hazard Incidents" endorsement create an inherent ambiguity, requiring resolution of the issue in favor of plaintiffs. The question whether policy language is ambiguous must be answered on a fact-specific basis. *Madison Constr. Co. v. The Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)(explaining that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts"). While this action for equitable contribution is not brought by an insured, the rule requiring ambiguous provisions of an insurance contract to be construed in

the Pennsylvania Supreme Court, the district court looked to the law of Indiana for the purpose of delineating the contours of the illusory coverage inquiry. *Id.* The district court determined that, under Pennsylvania law, "[a]n insurance provision is illusory if 'a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances.'" *Id.* (quoting *Fid. & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.*, 25 F.3d 484, 490 (7th Cir. 1994)). It was also noted that "[i]f a provision covers some risk [i.e., at least one risk] reasonably anticipated by the parties, it is not illusory." *Id.* (citing *City of Lawrence v. Western World Ins. Co.*, 626 N.E.2d 477, 480 (Ind.Ct.App. 1993)). The district court explained that if an exclusion provision would effectively preclude coverage for all risks reasonably anticipated by the parties under a particular coverage provision (i.e., an illusory coverage provision), the coverage provision should be enforced in a way that would protect the reasonable expectations of the insured. *Id.* Neither party appears to dispute that these standards are applicable under Pennsylvania law.

Since the *one risk* which the court found to be covered under the Greenwich Policy (i.e., bodily injury) is clearly *not* covered, Greenwich can prevail on the issue of illusory coverage only if there is *another risk* reasonably anticipated by the parties covered under the Greenwich Policy. In one of its earlier briefs, Greenwich briefly referred to "non-pollution property damage" as a risk. (Def.'s Reply to Pls.' Br. in Opp'n to Def,'s Mot. for Summ. J. (Doc. No. 46) at 5 ("Therefore, the hostile fire exception is not completely nullified by the Pollution Hazard Incident exclusion, and the Greenwich policy continues to provide coverage for bodily injury and

---

favor of coverage is applicable in this case, since plaintiffs' entitlement to equitable contribution depends on the underlying question whether the Greenwich Policy entitled Greenwich's insured to coverage for the damage at issue. *Imperial C as. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131-32 n.4 (3d Cir. 1988).

7

non-pollution related property damage caused by hostile fires.").) The court in the prior opinion did not focus on this alternative scenario, since it was proceeding on the erroneous assumption that bodily injury was covered. (Prior Op. (Doc. No. 51) at 32.) As discussed above, bodily injury is not covered because the Blowout & Cratering coverage is limited to property damage. (Def.'s Ex. 4 (Doc. No. 35-5) at 5-6.)

Once it became clear at oral argument that the court's earlier rationale could not sustain granting summary judgment in favor of Greenwich with respect to the illusory coverage issue, Greenwich asserted that non-pollution property damage sustained by third parties as a result of the blowout at the Ronco Well would have been covered for the full $1,000,000.00. (Tr. of Oral Argument (Doc. No. 60) at 33.) Plaintiffs argued that the blowout coverage under the Greenwich Policy would *never* be implicated in the absence of pollution. (*Id.* at 30.) The court asked Greenwich to provide affidavits concerning payments made by Greenwich for non-pollution property damage resulting from well blowouts. (*Id.* at 33) Plaintiffs conceded that the court had correctly determined that the incident at the Ronco Well constituted a "pollution hazard incident" within the meaning of the Greenwich Policy, and that it would be subject to the $100,000.00 sublimit in the event that coverage was not illusory. (*Id.* at 35.) Consequently, as the court observed during the oral argument, Greenwich's liability for equitable contribution (if any) would be limited to $100,000.00 if the Pollution Hazard Incidents Exclusion did not render illusory $900,000.00 of the blowout coverage, which otherwise would provide coverage for up to $1,000,000.00. (*Id.* at 34.)

The blowout coverage at issue in this case stems from the Greenwich Policy's "Blowout & Cratering Hazard" coverage. (Def.'s Ex. 4 (Doc. No. 35-5) at 5-6.) As noted earlier, coverage

8

thereunder is provided *only* for property damage and *not* for bodily injury. (*Id.*) The occurrence and aggregate limits are both listed as $1,000,000.00. (*Id.*) The Greenwich Policy defines the terms "blowout" and "cratering" as follows:

> (5) symbol "e", blowout or cratering hazard, which includes coverage for property damage to property located on or above the surface of the earth and arising out of blowout or cratering. For purposes of this exclusion blowout means an uncontrollable flow of gas, oil, drilling mud, water, well fluids, well materials, or a combination of any of them, from the wellhead or borehole, into the atmosphere, surface land or surface water or subterranean strata. Cratering means the creating of a bowl shaped depression in the earth's surface around the well caused by the erosive and eruptive action of oil, gas, air, or water flowing to the surface without restrictions from the well. . . .

(*Id.* at 11.) Courts which have applied the illusory coverage doctrine generally employed an endorsement-specific approach to the issue.[3] *Nat'l Fire & Cas. Co. v. West*, 107 F.3d 531, 537 n.6 (7th Cir. 1997); *Sears, Roebuck & Co. v. Reliance Ins. Co.*, 654 F.2d 494, 498-99 (7th Cir. 1981); *Home Exterminating Co. v. Zurich-American Ins. Group*, 921 F.Supp. 318, 323-24 (D.Md. 1996); *United States Fire Ins. Co. v. Hilde*, 322 S.E.2d 285, 288 (Ga.Ct.App. 1984). The question is whether a particular coverage provision is swallowed-up by an exclusion, not whether the policy as a whole provides some degree of coverage despite the existence of an exclusion. As a general rule, an endorsement is not rendered illusory by an exclusion if, despite the exclusion, the endorsement continues to cover at least one risk reasonably anticipated by the parties. *St.*

---

[3] The court adheres to its view, expressed to Greenwich's counsel at the oral argument, that the illusory coverage issue must be examined with respect to blowout coverage, and that Greenwich cannot defeat plaintiffs' illusory coverage argument simply by relying on potential coverage for cratering. (Tr. of Oral Argument (Doc. No. 60) at 34-37.) The policy language separates the words "blowout" and "cratering" with the disjunctive "or," thereby providing coverage for two alternative risks. Greenwich's insured payed a premium surcharge to remove the symbol "e" exclusion for blowout *or* cratering coverage, and Greenwich cannot reasonably argue that the symbol "z" sublimit does not render *blowout* coverage for the full $1,000,000.00 illusory simply because the full amount is nevertheless available to cover *cratering*.

*Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F.Supp.2d 630, 632-33 (M.D.Pa. 2007). Nevertheless, "an insurer cannot avoid an illusory coverage problem by simply conceiving of a single hypothetical situation to which coverage would apply." *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F.Supp. 694, 701 (S.D.Ind. 1996). A plaintiff relying on the illusory coverage doctrine can prevail by showing that the likelihood of coverage is "'sufficiently remote to be deemed illusory.'" *Id.* (quoting *Meridian Mut. Ins. v. Richie*, 540 N.E.2d 27, 30 (Ind. 1989)).

In support of its argument that blowout coverage under the Greenwich Policy for up to $1,000,000.00 is not rendered illusory by the Pollution Hazard Incidents Exclusion, Greenwich presented the affidavit of William A. Burton ("Burton"). (Burton Aff. (Doc. No. 55).) Burton is the claims manager for DBG & Associates, Inc. ("DBG"), which serves as the managing general agent of Greenwich. (*Id.* at 2.) He has been employed in that capacity for over ten years. (*Id.*) His work is exclusively devoted to adjusting claims related to oil and gas. (*Id.*) Before commencing his employment with DBG, Burton worked in a similar capacity for Oil and Gas Insurance Company ("OGIC"), which used endorsements and exclusions akin to those used in the Greenwich Policy. (*Id.*)

In his affidavit, Burton states that an insured's optional payment of a small premium surcharge removes the symbol "e" exclusion for blowout or cratering hazard incidents. (*Id.* at 1-2.) Hence, the language defining symbol "e" operates as an exclusion if the surcharge is not paid and as a coverage provision if the surcharge is paid. In this case, it is clear that Greenwich's insured paid the surcharge, since the Greenwich Policy indicates that the Blowout & Cratering Hazard Incident is *included* therein. (Def.'s Ex. 4 (Doc. No. 35-5 at 5).) The occurrence and

aggregate limits of this coverage are both $1,000,000.00. (*Id.* at 6.) Burton asserts that, while adjusting claims for OGIC, he authorized payments totaling $41,181.43 to be made under a symbol "e" blowout and cratering hazard provision for the loss of a home resulting from a fire and an explosion. (Burton Aff. (Doc. No. 55) at 2-3.) He claims that "blowout" coverage was provided in that instance despite the existence of a symbol "z" pollution hazard incident exclusion. (*Id.* at 3.) Burton describes instances in which Greenwich set aside loss reserves for possible property damage payments under the blowout provision of symbol "e."[4] (*Id.* at 3-4.) Most importantly, he states that he set aside a symbol "e" blowout loss reserve of $350,000.00 for property damage to a drilling rig and other equipment damaged in the fire at the Ronco Well, which is the very incident at issue in this case. (*Id.* at 4.) He contends that, had a claim been asserted against an insured of Greenwich for the "fire loss" to the drilling rig or other property in the area, Greenwich would have been obliged to defend and indemnify its insured under the symbol "e" blowout provision. Apparently, no claim has been presented to Greenwich up to this point. (*Id.*)

In support of their position, plaintiffs presented an affidavit from John T. Klagholz ("Klagholz"). (Klagholz Aff. (Doc. No. 58) at 1-3.) Klagholz is licensed in Pennsylvania as a non-resident producer of insurance policies. (*Id.* at 1.) He has been involved in the insurance industry as an adjuster and producer in personal, property and casualty insurance since 1969. (*Id.*) Klagholz states that setting loss reserves for a particular claim cannot be equated with

---

[4]Plaintiffs' counsel submitted a certification in which he disputes Burton's characterizations of some of these instances. (Certification of Mark E. Utke (Doc. No. 59).) The court will not dwell on the specific disagreements between the parties' characterizations of these past incidents. The present state of the record does not lend itself to resolving the illusory coverage issue at the summary judgment stage.

making a payment on such a claim. (*Id.* at 2.) He contends that the instance referenced by Burton in which a payment was made for blowout-caused property damage unrelated to pollution concerned an insurance policy issued by Security Insurance Company of Hartford, a Delaware corporation with a business address in North Carolina. (*Id.*) Klagholz asserts that Greenwich cannot reference a particular instance in which it has made a payment to a third party for non-pollution property damage arising out of a well blowout because a well blowout, by definition, is a pollution event. (*Id.*)

At the oral argument, the court observed that evidence indicating that Greenwich had regularly made payments for non-pollution property damage resulting from blowouts would be "compelling" evidence that the Pollution Hazard Incidents Exclusion (or sublimit) does not render illusory the blowout coverage provided under the Greenwich Policy. (Tr. of Oral Argument (Doc. No. 60) at 37.) Burton's affidavit certainly falls short of that standard, since it does not establish that Greenwich has ever made a payment for such damage. Hence, Greenwich is not entitled to summary judgment on the issue of illusory coverage.

It does not follow, however, that plaintiffs are entitled to summary judgment. In his affidavit, Burton describes oil and gas well blowouts as "very rare occurrences." (Burton Aff. (Doc. No. 55) at 2.) Greenwich's inability to identify an instance in which it has made a payment for blowout-caused property damage unrelated to pollution may be due to a scarcity of blowouts rather than the lack of coverage alleged by plaintiffs. The Pennsylvania Supreme Court has recognized that the customs of the insurance industry can be considered when the interpretation of an insurance policy is at issue. *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193-95 (Pa. 2001). Evidence that another insurance company made a payment for non-pollution

12

property damage resulting from a blowout has been presented by Greenwich. This evidence at the summary judgment stage is sufficient to create a genuine issue of material fact about whether non-pollution property damage resulting from a blowout can fairly be said to constitute a "reasonably expected set of circumstances," *St. Mary's Water Authority*, 464 F.Supp.2d at 412, as opposed to a set of circumstances in which the likelihood of coverage is "sufficiently remote to be deemed illusory." *Monticello Ins. Co.*, 949 F.Supp. at 701 (quoting *Meridian Mut. Ins. v. Richie*, 540 N.E.2d 27, 30 (Ind. 1989)). Plaintiffs concede that the blowout at the Ronco Well constituted a pollution hazard incident within the meaning of the Greenwich Policy, and that the $100,000.00 sublimit would clearly apply but for the question of illusory coverage. (Tr. of Oral Argument (Doc. No. 60) at 35.) Thus, the disagreement between the parties concerns a factual issue (i.e., the likelihood that non-pollution property damage would ever result from a blowout), rather than a strictly legal issue (i.e., the construction of the Greenwich Policy's language). For this reason, the illusory coverage issue will be resolved at trial.

Since Greenwich's potential liability for equitable contribution in this case may now extend to the full $1,000,000.00, the court must address Greenwich's argument that Federal's payments in this case were made on a "volunteer" basis, thereby absolving Greenwich of any potential liability to Federal. (Prior Op. (Doc. No. 51) at 35-37 (declining to reach this issue on the ground that the $100,000.00 sublimit contained in the Pollution Hazard Incidents Exclusion rendered it moot).) Under Pennsylvania law, the doctrine of equitable subrogation "will not be invoked to protect mere volunteers." *Dominski v. Garrett*, 419 A.2d 73, 77 (Pa.Super.Ct. 1980) (citing *Beck v. Beiter*, 146 Pa. Super.Ct. 114 (1941)). Greenwich argues that, even if it is liable to Great Northern for equitable contribution, it is not liable to Federal, since any payments made

13

by Federal under its "umbrella" policy occurred prior to the exhaustion of Atlas Resources' primary coverage under the Great Northern and Greenwich Policies.[5] Plaintiffs point out that it is not clear that the "volunteer" doctrine discussed by Greenwich is applicable in the equitable *contribution* context (as opposed to the equitable *subrogation* context). Even assuming that the doctrine can have application in an equitable contribution case like this, Greenwich would not be entitled to summary judgment on this issue.

Pennsylvania law defines a "volunteer" as "a stranger or intermeddler who has no interest to protect and is under no legal or *moral* obligation to pay under the circumstances." *Massachusetts Bonding & Ins. Co. v. Car & General Ins. Corp.*, 152 F.Supp. 477, 482 (E.D.Pa. 1957)(emphasis added) (citing *Beck v. Beiter*, 146 Pa. Super.Ct. 114 (1941)). Although Greenwich's primary policy had not been exhausted when Federal made payments, Federal still would have had obligations to pay on behalf of Atlas Resources under its umbrella policy in the event that Greenwich did not make payments under its primary policy. The law does not force insurers to sacrifice their right of subrogation if they make a prompt (but erroneous) payment because of a good faith belief that a payment is owed. *Jorge v. Travelers Indem. Co.*, 947 F.Supp. 150, 156 (D.N.J. 1996)(citing *Weir v. Federal Ins.* Co., 811 F.2d 1387, 1395 n.6 (10th Cir. 1987))("Were an insurer's right to subrogation imperiled unless it asserted all potential defenses against its insured before it paid a claim, the obvious result would be that insurers would resist prompt payment of claims."). Since Federal's reasons for making payments are not

---

[5]The court merely assumes *arguendo* that payments were made on behalf of Atlas Resources for purposes of this analysis. The question whether payments were made on behalf of Atlas Resources or Atlas America will be determined at trial. (Prior Op. (Doc. No. 51) at 17.)

entirely clear at this point, resolution of the volunteer issue (to the extent that the "volunteer" doctrine applies in this case) will have to wait for trial.

*Conclusion*

The court's prior determination that Greenwich's liability for equitable contribution in this case (if any) is limited to $100,000.00 was based solely upon the perceived availability of coverage for bodily injury resulting from a blowout like that which occurred at the Ronco Well. (Prior Op. (Doc. No. 51) at 32.) It is now clear to the court that coverage for bodily injury would *not* exist for a blowout. The court's prior opinion is **VACATED** insofar as it held that Greenwich's liability for equitable contribution (if any) is limited to $100,000.00. The prior opinion remains valid in all other respects. Plaintiffs' motion for reconsideration is **GRANTED** and the court concludes there are genuine issues of material fact relating to whether the blowout coverage would be illusory if the $100,000 limitation were imposed. Under those circumstances, summary judgment cannot be granted in favor of Greenwich on that issue.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated: May 12, 2008

cc: All counsel of record