IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREAT NOTHERN INSURANCE COMPANY )
)
and )
)
FEDERAL INSURANCE COMPANY )
)
             Plaintiffs, ) Civil Action No. 05-635
)
v. )
)
)
GREENWICH INSURANCE COMPANY )
)
             Defendant. )

MEMORANDUM OPINION

CONTI, District Judge

The instant case arises out of the blowout of a natural gas exploration well that occurred near Ronco and Nemacolin, Pennsylvania, on February 2, 2004. Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal" and together with Great Northern, collectively "plaintiffs") commenced this action against Greenwich Insurance Company ("Greenwich" or "defendant") seeking equitable contribution in the amount of $802,683.41 for payments made under insurance policies issued by plaintiffs to third parties whose properties were damaged as a result of the blowout. Both plaintiffs and defendant filed motions for summary judgment, and both motions were granted in part and denied in part. Plaintiffs subsequently filed a motion for reconsideration, which the court granted. After the resolution of the motions, the sole remaining issues for trial were whether Great Northern made payments on behalf of Atlas Resources, Inc. ("Atlas Resources"), whether blowout coverage

issued by Greenwich under Petroleum Energy Policy No. MP37-001389-03 ("Greenwich policy") would have been illusory if the $100,000 limitation provided for by the Greenwich policy was imposed, and whether Federal made payments as a volunteer. On August 11, 2008, this court heard evidence and argument on the sole remaining issues during a bench trial. On September 8, 2008, defendant and plaintiffs both filed proposed findings of fact and conclusions of law.

Pursuant to Federal Rule of Civil Procedure 52, this court makes the following findings of fact and conclusions of law with respect to plaintiff's claim for equitable contribution which are dispositive of all remaining issues.

### A. Findings of Fact

1. This case arises from the blowout of a natural gas exploration well known as the Ronco USX # 3 Well ("Ronco well") located near the town of Ronco in Fayette County, Pennsylvania on February 2, 2004. Joint Stipulation of Material Facts for Trial ("J.S.") ¶ 1. Defendant's insured, Gene D. Yost & Sons, Inc. ("Yost"), was engaged in drilling a well for plaintiffs' insureds, Atlas America, Inc. ("Atlas America") and its wholly owned subsidiary, Atlas Resources. Id. ¶ 2.

2. Atlas America was engaged in the business of owning and developing various developmental natural gas production wells. Atlas America owned 80 percent of the working interest in the Ronco well. Trial Transcript of August 11, 2008 ("Trial Tr.") at 115. Atlas Resources, a wholly owned subsidiary of Atlas America, acted as the official operator of certain wells owned by Atlas America, including the Ronco well. J.S. ¶ 26.

3. Atlas America was listed as the first named insured on a policy of insurance issued by Great Northern. Great Northern was a member of the Chubb Group of Insurance Companies ("Chubb"). Id. ¶ 3. Great Northern issued Energy Industries Commercial General Liability Policy No. 3710-63-26 ("Great Northern policy") with effective dates of February 1, 2003 through March 1, 2004 and primary policy limits of $1,000,000.00. Id. ¶ 4. There were forty-five named insureds on the Great Northern policy, including Atlas America and Atlas Resources. Id. ¶ 5. The Great Northern policy provided coverage for claims arising from bodily injury and property damage. Id. ¶ 15.

4. Atlas America was the first named insured on an umbrella policy of insurance issued by Federal. Federal is a member of Chubb. Id. ¶ 6. Federal issued Commercial General Liability Policy No. 7972-09-63 ("Federal policy") with effective dates of February 1, 2003 through March 1, 2004 and excess policy limits of $25,000,000.00. Id. ¶ 7. There were forty-five named insureds on the Federal policy, including Atlas America and Atlas Resources. Id. ¶ 8. The Federal policy was an umbrella policy that was intended to exceed the primary insurance available for a particular risk. Id. ¶ 14.

5. Greenwich issued the Greenwich policy with effective dates from July 9, 2003 through July 9, 2004, naming Yost and Diamond Y Enterprise, Inc. as named insureds. Id. ¶ 11. Atlas Resources was named as an additional insured under the policy of insurance issued by Greenwich. Id. ¶ 13. Atlas America was not insured by Greenwich. The Greenwich policy had primary policy limits of $1,000,000.00. Id. ¶ 12. The Greenwich policy provided commercial general liability coverage for claims arising from bodily injury and property damage. Id. ¶ 19.

6. Plaintiffs received notification of the Ronco well blowout on February 6, 2004 from a representative of one of their insureds, Jeff Simmons ("Simmons") of Atlas America. Id. ¶ 23. Simmons was a vice president of both Atlas America and Atlas Resources, and he supplied information regarding the incident to the insurers. Trial Tr. at 73, 113. As a result of cleanup expenses and other damages incurred to third parties, Great Northern paid its policy limits of $1,000,000.00 and Federal paid $605,366,83 for third-party claims associated with the Ronco well blowout. J.S. ¶ 10.

**The Master Work Agreement**

7. Defendant's named insured, Yost, was engaged in the drilling of natural gas production wells. J.S. ¶ 27. Atlas America entered into a master work agreement with Yost for the purpose of engaging Yost to drill natural gas development wells in and around Fayette County, Pennsylvania, including the Ronco well. Id. Plaintiffs understood the reference to "Atlas America, Inc., and others, et al." in the master work agreement to include Atlas Resources. Trial Tr. at 94.

8. Atlas Resources entered into a drilling contract with Yost for the purposes of drilling specific wells owned by Atlas America, including the Ronco well. J.S. ¶ 27. Atlas Resources and Yost were the only parties to this drilling contract. Trial Tr. at 91-92.

**Insurance Industry Standards**

9. In the insurance industry, when there is more than one named insured on a particular policy, that particular policy is almost always referenced by the first named insured. Trial Tr. at 16. The first insured has a responsibility for speaking on behalf of all other additional insureds or loss payees that are attached to the policy. Id. When the insurer

desires to cancel or terminate the policy, notice to the first named insured is sufficient and payment of premiums or refund of premiums is made to the first named insured and not allocated by the insurer among additional insureds. Id. at 17.

10. In the insurance industry, releases are also referenced by the first named insured. Trial Tr. at 21. Releases for claims paid state that the claimant agreed to release and forever give up all claims and rights to both the named insured and "its respective subsidiaries, parent corporations, affiliates, officers, directors, shareholders, successors, heirs, agents, successors in interest and assigns." Id. An insurance company protects itself by issuing a release in the name of all insureds under a policy regardless whether the payment was made for the benefit of a single insured. Id. at 22. In lieu of obtaining the signature of every releasee, the first named insured signs for itself and all other insured parties. Id. at 22-23.

11. Once plaintiffs made the determination that Atlas Resources was an additional named insured under the Atlas America titled policies, it no longer made a difference to them whether their representative referred to a claim as that of Atlas Resources or Atlas America. Trial Tr. at 95. Plaintiffs' representative referred to a claim as that of Atlas America because Atlas America was the first named insured under the policy; it did not make a difference to plaintiffs with respect to adjusting a claim whether it was being adjusted for Atlas Resources or Atlas America. Id.

**Correspondence between Plaintiffs and Greenwich**

12. In correspondence with Greenwich, plaintiffs used the name "Atlas America" instead of "Atlas Resources" when making reference to the claims from the Ronco well blowout

because Atlas America was the first named insured on the policy, and it was the practice of plaintiffs to always use the first named insured in all correspondence. Trial Tr. at 87.

13. Plaintiffs' typical general property damage release stated:

> In consideration of payment of the sum of . . . and other good and valuable consideration, receipt of which is hereby acknowledged, I do hereby release and forever give up all claims and rights which I may have against Defendants Atlas America, Inc., and its respective subsidiaries, parent corporations, affiliates, officers, directors, shareholders, successors, heirs, agents, successors in interest, and assigns . . . in connection with the oil well explosion which occurred on February 2nd 2004 . . . .

Pl.'s Ex. 21.

14. On March 1, 2004, a claims adjustor for plaintiffs, Megan Trend ("Trend"), sent a letter to Yost concerning the implication of Greenwich insurance in the Ronco well blowout. Pl.'s Ex. 9 at 1. On March 9, 2004, DBG & Associates ("DBG"), Greenwich's claims adjustor, acting through its agent William Burton ("Burton") responded. Pl.'s Ex. 9 at 1. Burton asked for a complete, legible, and properly executed master work agreement between Yost and Atlas America, and stated that DBG's preliminary investigation indicated no liability on the part of Yost and requested Trend to forward the results of plaintiffs' investigation. Id.

15. Trend furnished a copy of the master work agreement as Burton requested, and Burton replied in an April 19, 2004 letter stating that the indemnity clause in the master work agreement only offered indemnity for claims asserted by a contractor, contractor's employees, or contractor's subcontractors or employees of a subcontractor ("contractor-related persons") due to bodily injury, death, or damage to property, and therefore

6

Greenwich had no obligation to indemnify Atlas America under the master work agreement. Pl.'s Ex. 13. Because the claims asserted were from third parties who were not contractor-related persons, Burton believed that there was no reimbursement owed to plaintiffs. Id.

16. In a letter to the vice president of Greenwich dated June 21, 2004, Burton stated:

> The hook in all of this is that Atlas America is not an additional insured under the policy of insurance issued to [Yost]. However, Atlas Resources is an additional insured under the policy issued to [Yost].
> To date, Chubb has not requested additional insured status and has continued to pursue claims on behalf of Atlas America. This is very good for us since we believe no indemnity is owed Atlas America in this matter. However, if and when Chubb figures out that Atlas Resources is an additional insured, they can certainly pursue recovery under the policy issued to [Yost].
> . . . [I]t may eventually work out that the two carriers will share in the loss. However, we do not intend to educate Atlas Resources or its insurer concerning these matters.

Pl.'s Ex. 15.

17. Trend replied to the April 19, 2004 letter in a February 22, 2005 letter telling Burton that plaintiffs were making a claim for contribution from Greenwich for its proportionate share of all costs based upon the clauses contained in both policies. Def.'s Ex. P at 2. In the February 22, 2005 letter, Trend also claimed that Atlas America was a named additional insured under the Greenwich policy as well as under the Great Northern and the Federal policies. Id.

18. Burton, in response to the February 22, 2005 letter, sent a letter dated April 20, 2005 informing Trend that only Atlas Resources was named in the Greenwich policy, and Greenwich did not owe plaintiffs any reimbursement for the costs and expenses related to

7

third-party damages claims because the Greenwich policy did not afford coverage for Atlas America. Pl.'s Ex. 16.

19. In the relevant correspondence, plaintiffs did not advise Greenwich that they had made payments on behalf of Atlas Resources, but instead only referenced Atlas America. Trial Tr. at 138. Plaintiffs' representative continued to refer to all payments being made on behalf of Atlas America, and asked Greenwich to recognize Atlas America as an additional insured under the Greenwich policy. Id. at 140. Plaintiffs' representative also believed that there was no distinction between Atlas America and Atlas Resources and that the two entities "are one in [sic] the same from a legal standpoint." Def.'s Ex. Q.

20. Despite the correspondence with Greenwich, plaintiffs continued to pay for cleanup and claims from the Ronco well blowout based upon the Federal policy. Plaintiffs did so because legal liability could have attached for bad faith and breach of coverage, even though plaintiffs communicated to Greenwich their belief that Greenwich was financially responsible for the loss. Trial Tr. at 102.

**Determination of Liability**

21. Legal liability was a precondition to coverage under the Great Northern and the Federal policies; claim payments were not to be made unless it was determined that there was legal liability on behalf of the insured. Trial Tr. at 117. Plaintiffs, however, did not determine ultimate liability. Plaintiffs' claims adjustor simply determined whether there *could* have been liability on behalf of the insured. Id. at 92.

22. Plaintiffs never made a determination in the course of their investigation of the relative proportion of liability between Atlas Resources and Atlas America. Trial Tr. at 116.

Plaintiffs never resolved what caused the well blowout, who may have been negligent in causing the blowout, or who was liable for the blowout. Id. at 143-44.

**B. Conclusions of Law**

**Equitable Contribution – General**

1. Since subject-matter jurisdiction in this case is predicated on diversity of citizenship under 28 U.S.C. § 1332(a)(1), the court must apply the choice of law rules applicable in the Commonwealth of Pennsylvania. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). The parties do not dispute that the substantive law of Pennsylvania is applicable in this case.

2. A claim in equitable contribution under Pennsylvania law arises out of "the respective obligations as between several insurers who have covered the same risk." Gen. Accident Ins. Co. of Am. v. Safety Nat'l Cas. Co., 825 F. Supp. 705, 707 (E.D. Pa. 1993) (applying Pennsylvania law). Those obligations do not arise out of contract, but are "based upon equitable principles designed to accomplish ultimate justice in the bearing of a specific burden." Id. at 707. The considerations that apply in a case for equitable consideration "depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurer." Id. (quoting Signal Cos. v. Harbor Ins. Co., 612 P.2d 889, 895 (Cal. 1980)).

3. Under Pennsylvania law, to recover on a claim for equitable contribution, an insurer must prove that (1) it is one of several parties liable for a common debt or obligation, and (2) it

discharged the debt for the benefit of the other parties. See In re Mellon's Estate, 32 A.2d 749, 757 (Pa. 1943).

4. In civil cases generally, a party asserting a claim must prove the elements of the claim by a preponderance of the evidence. Ragnar Benson, Inc. v. Bethel Mart Assocs., 454 A.2d 599, 602 (Pa. Super. Ct. 1981); see 21B CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5122, at 409 (2d ed. 2005). Mere speculation does not carry the burden of proof of a preponderance of the evidence. Wickard v. Lebo, 38 Pa. D. & C.3d 339, 345 (Pa. Ct. Com. Pl. 1984).

5. Here, the court must determine whether plaintiffs by a preponderance of the evidence proved both elements of a claim for equitable contribution.

**Equitable Contribution – Element One**

6. With respect to the first element, whether plaintiffs and defendant are parties liable for a common debt or obligation – the court must address whether the insurers covered the same interest and subject matter against the same risk. See Liberty Mut. Ins. Co. v. Home Ins. Co., 583 F. Supp. 849, 852 (W.D. Pa. 1984).

7. The parties agree that Atlas Resources is a wholly owned subsidiary of Atlas America and the policies of both Greenwich and plaintiffs cover Atlas Resources. Plaintiffs, however, did not show that the parent company, Atlas America, is an additional insured under the Greenwich policy. "An insurance policy issued to a subsidiary does not automatically cover the parent company." Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, 167 F. Supp. 2d 1004, 1008 (N.D. Ill. 2001). Atlas America is not insured under the Greenwich policy.

8. Because Atlas America is not insured under the Greenwich policy, plaintiffs must prove

they are entitled to equitable contribution based upon the existence of insurance coverage for Atlas Resources by plaintiffs and Greenwich.

9. Plaintiffs proved that they and Greenwich were liable under their respective insurance policies for a common obligation to Atlas Resources. Plaintiffs issued two insurance policies, the Great Northern policy and the Federal policy, covering Atlas Resources as an additional named insured. The Great Northern policy provided coverage for claims arising from bodily injury and property damage, and the Federal policy was intended to exceed the primary insurance available for the risks covered by the Great Northern policy.

10. Greenwich insured Atlas Resources as an additional named insured under the Greenwich policy. The Greenwich policy provided Commercial General Liability coverage for claims arising from bodily injury and property damage.

11. Plaintiffs satisfied the first element of a claim for equitable contribution – plaintiffs and Greenwich were liable to provide Atlas Resources with insurance coverage, a common obligation, in the event of a claim for bodily injury or property damage arising from the Ronco well blowout.

**Equitable Contribution – Element Two**

12. With respect to the second element of a claim for equitable contribution, plaintiffs did not prove by a preponderance of the evidence that either of them discharged an obligation on behalf of Atlas Resources.

13. There are no decisions applying Pennsylvania law that addressed the situation in which there was a common obligation to one entity and a party sought equitable contribution for payments made on behalf of that entity and another entity and the party failed to prove

how it allocated the payments between the entities. No published opinions were found which addressed that situation. The Court of Appeal of California, applying California law, however, addressed such a situation in a non-precedential opinion, <u>Crusader Insurance Co. v. USF & G Insurance Co.</u>, No. BC293882, 2007 WL 1140417 (Cal. Ct. App. Apr. 18, 2007). In that case, both Crusader Insurance Company ("Crusader") and USF & G Insurance Company ("USF & G") insured an entity that was one of several defendants in four lawsuits. <u>Id.</u> at * 1. The parties in each lawsuit reached a settlement that provided for a lump sum payment to settle each case in its entirety, including the claims against uninsured entities. Crusader and USF & G contributed to the settlements in varying amounts. <u>Id.</u> at *1-2. Crusader sued USF & G for equitable contribution to recover USF & G's pro rata share of the indemnity obligations to their mutual insured. <u>Id.</u> at *2. The trial court held that no evidence was presented to allow the trial court to determine the amount of contribution, because it was unable to make a reasonable allocation. The trial court entered judgment in favor of USF & G. <u>Id.</u> at *3. The Court of Appeal of California affirmed, holding that the trial court was powerless to accomplish ultimate justice between the parties because there was insufficient evidence with respect to the allocation of payments. <u>Id.</u> at *5-6. The settlement did not allocate responsibility with respect to each defendant, and Crusader did not offer evidence at trial regarding an allocation. The trial court was left to speculate, and as a result it had no duty to fashion a remedy in equity. <u>Id.</u> at *7.

14. When plaintiffs began making claim payments for the Ronco well blowout, they identified claims and payments by referring only to Atlas America. Plaintiffs' conduct

was consistent with insurance industry standards for identifying claims and making payments. Plaintiffs did not introduce evidence that they made all or at least a portion of those payments on behalf of Atlas Resources and not Atlas America.

15. Information relating to claims arising from the Ronco well blowout was supplied to plaintiffs by Simmons, the vice president for both Atlas America and Atlas Resources, and this information was used in assessing the claims of the Ronco well blowout. Releases obtained by plaintiffs and correspondence to and for plaintiffs relating to these particular claims arising from the Ronco well blowout were referenced using only the name "Atlas America."

16. Plaintiffs, during the course of their investigation relating to the Ronco well blowout, did not allocate the relative proportion of liability between Atlas Resources and Atlas America. Under these circumstances, the court is left to speculate whether any claim payment made by plaintiffs was for coverage afforded to Atlas Resources.

17. Plaintiffs also did not introduce evidence of the negligence or another basis for legal liability of Atlas Resources, the operator, for the blowout. Plaintiffs did not determine the ultimate liability of either Atlas America or Atlas Resources; plaintiffs' claims adjustor simply determined whether there potentially could have been liability as a result of the actions of an insured. Under these circumstances, the court cannot find by a preponderance of the evidence on the record before it that plaintiffs paid a claim arising from the Ronco well blowout on behalf of Atlas Resources.

18. Without evidence upon which the court could allocate claim payments between Atlas America and Atlas Resources and no showing that Atlas Resources was liable for the

third-party damages resulting from the Ronco well blowout which were paid by plaintiffs, the court must find that plaintiffs did not establish the second element of a claim for equitable contribution.

19. The evidence of record does not show that either plaintiff discharged an obligation for the benefit of Greenwich. Plaintiffs failed to establish they discharged the debt for the benefit of defendant, which is the second element of an equitable contribution claim, and judgment must be entered in favor of defendant. The other issues for trial need not be reached. An appropriate order will be entered.

Dated: October 16, 2008

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc: Counsel of record